# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1641 | **DATE** | 9/29/2004 |
| **CASE TITLE** | Judy O'Brien vs. J Sterling Morton High School District 201 [Doc. No. 9] | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment [Doc. No. 9]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Defendant's motion for summary judgment [Doc. No. 9] is GRANTED in part and DENIED in part. Defendant's motion for summary judgment is GRANTED as to all claims prior to March 2, 2002. Defendant's motion for summary judgment is DENIED as to claims after March 1, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 30 2004 | 24 |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| slf(lc) | courtroom deputy's initials | 2004 SEP 30 PM 2:12 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JUDY O'BRIEN,

    Plaintiff,

v.

J. STERLING MORTON HIGH SCHOOL
DISTRICT 201,

    Defendant.

No. 03 C 1641

HONORABLE DAVID H. COAR

## MEMORANDUM OPINION AND ORDER

Plaintiff Judy O'Brien ("Plaintiff" or "O'Brien") brings suits against her employer, J. Sterling Morton High School District 201 ("Defendant" or "School District"), alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Before this Court is Defendant's motion for summary judgment on Plaintiff's one-count complaint. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion for summary judgment is GRANTED as to all claims prior to March 2, 2002. Defendant's motion for summary judgment is DENIED as to all claims after March 1, 2002.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)).

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and makes all reasonable inferences in her favor. See Haywood v. Lucent Technologies, 323 F.3d 524 (7th Cir. 2003). The Court accepts the non-moving party's version of any disputed facts, but only if those facts are supported by relevant, admissible evidence. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

The moving party has the burden of demonstrating the absence of genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the moving party meets this burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion for summary judgment, the non-moving party cannot rest on the pleadings alone but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

## II. FACTS[1]

O'Brien has been employed with the School District since 1994. O'Brien, who has a Master's Degree in Education, had twenty-one years of teaching experience prior to her employment with the School District. From 1994 to 2001, O'Brien served as the Assistant

---

[1] Unless otherwise noted, these fact are taken from the parties' Local Rule 56.1 materials.

Director of Special Education for the School District. At the time Plaintiff was hired, the School District had a policy of paying administrators based on a formula set forth in the collective bargaining agreement negotiated with the union representing the School District's teachers. As a result, Plaintiff's salary was based at step 21, plus seven percent.[2] While Assistant Director of Special Education, Joe Gunty ("Gunty") was the full-time Director of Special Education.

Prior to the commencement of the 2001-2002 school year, O'Brien was asked to take the position of Director of Special Education for the School District, and she agreed to take this position. O'Brien contends that although she was given a three percent, nominal increase in salary (which O'Brien asserts she would have received in her position as Assistant Director), she contends that she was given no increase for the promotion from Assistant Director to Director. Plaintiff asserts that Gunty, her predecessor, had been paid based on step 21 plus ten percent, while her salary only equated to step 21 plus seven percent.

When Plaintiff became Director of Special Education, Gunty was moved from the position of Director of Special Education to a new position, Building Administrator Dean of Instruction. O'Brien contends that Gunty was given a four percent salary increase in his position, while O'Brien was given only a three percent increase in her new position. O'Brien also notes that her prior position of Assistant Director was not filled during the year she served as Director, and therefore, she contends that she had less administrative assistance than her male predecessor had.

---

[2]Step 21 relates to a salary schedule memorialized in the 1992-1993 collective bargaining agreement.

O'Brien also notes changes in salary structures that occurred when James Cuneen ("Cuneen") became Superintendent of the School District on July 1, 1999. As Superintendent, part of Cuneen's duties include setting the salaries of administrative personnel, which are recalculated every year (with the exclusion of those administrators who were hired pursuant to a long-term contractual agreement). Every year, Cuneen, along with the School Board members, went into executive session. Cuneen provided the School Board with the existing salaries for all the administrators that he believed should be renewed, and then he and the Board members talked about the ranges of increases for those salaries. When Cuneen became Superintendent, he eliminated the process of setting administrators' salaries by the step 21 process. Although he did not have a set process for establishing salaries, Cuneen did note that it was his mission to cut salaries. O'Brien contends that while Cuneen generally recommended the same percentage salary for most administrators, there were exceptions, and O'Brien contends that these exceptions were all based on Cuneen's subjective determination. O'Brien maintains that the only reason Cuneen gave for not recommending an increase in salary for her when she was promoted from Assistant Director to Director of Special Education was that his mission was to cut salaries, and he thought she was being paid enough, yet gave no reason as to why Gunty, was given a greater salary increase when he was promoted to Director of Special Education.

In the spring of 2002, Plaintiff requested to return to the classroom for the upcoming school year. O'Brien felt that as Director of Special Education, she did not have an adequate support staff, because no one filled the Assistant Director of Special Education position that Plaintiff vacated when she became Director of Special Education. O'Brien contends that she asked Cuneen about what salary she would be given upon returning to the classroom. Plaintiff

-4-

maintains that Cuneen told her he would have to ask Mrs. Kelly ("Kelly"), the President of the School Board, as she was the person responsible for all salary decisions. O'Brien contends that Cuneen did not get back to her about the salary she would be paid upon returning to the classroom. Subsequently, O'Brien met with the School Board attorney and some other administrators to discuss her salary. The attorney told her that based upon the Collective Bargaining Agreement with the Teacher's Union, the most credit she would receive for experience before she began working in the Morton School District was ten years. While O'Brien disagreed with that decision, she received no further information on what her salary was going to be. O'Brien also contends that she attempted to discuss her salary with the Board, but was not allowed to appear before them. When Plaintiff expressed her concerns to Kelly, Kelly had no idea why O'Brien's salary as a teacher was set where it was. In a letter dated July 3, 2002, the District's Board of Education gave O'Brien the option to either: (1) continue to serve in the administrative position to which she had been appointed and receive a salary of $86,382; or (2) return as a classroom teacher with placement on the teachers' salary schedule at MA+30 (Master's Degree plus 30 credit hours), step 19, with a salary of $67,783. Although O'Brien did not feel that this was the appropriate salary level, she decided to return to the classroom.

Subsequently, with the assistance of the Teacher's Union, O'Brien filed a grievance with respect to her placement on the salary schedule. The Union, however, informed Plaintiff that it could not continue to pursue the grievance, even though they would have liked to, because O'Brien was not a teacher at the time the grievance was filed, and as a consequence, her claim was not arbitrable. After failing to receive any relief from the Teacher's Union, Plaintiff filed her claims of alleged discriminatory pay with the Equal Employment Opportunity Commission

("EEOC"), via the Illinois Department of Human rights, on December 27, 2002. Plaintiff received her notice of right to sue letter on January 31, 2003, and filed her Complaint in this Court on March 6, 2003.

## III. ANALYSIS

### A. Defendant's Motion to Strike Plaintiff's Response

In its reply in support of its motion for summary judgment, Defendant moves to strike the Plaintiff's response in opposition to Defendant's motion for summary judgment, for failure to cite to any Local Rule 56.1 materials. In addition, Defendant contends, Plaintiff's Local Rule 56.1 additional statements and facts, and her response to Defendant's statement of facts, contain a mixture of factual allegations and argument, and therefore, the Court should disregard any Local Rule 56.1 statement that contravenes the Court's standing order (which prohibits the use of argument in the Rule 56.1 pleadings).

As an initial matter, the Court notes its displeasure at parties filing motions to strike in reply briefs, without failing to notice a specific motion. Notwithstanding Defendant's failure to file a separate motion to strike, the Court also notes the Plaintiff's failure to cite to any Local Rule 56.1 materials in her response to Defendant's motion for summary judgment. This greatly complicates the Court's ability to determine if there are genuine issues of material fact that require the denial of summary judgment. In addition, mixing factual allegations and arguments in Local Rule 56.1 statements also complicates the Court's ability to determine whether genuine issues of material fact exists. While the Court notes these deficiencies makes its task more arduous, it will not strike the Plaintiff's response to Defendants' motion for summary judgment. However, the Court will disregard any arguments made in the Plaintiffs' Local Rule 56.1 statement of facts in

opposition to Defendant's motion for summary judgment. Therefore, Defendant's motion to strike is denied.

### B. O'Brien's Allegations

Plaintiff's allegations of sex discrimination are based on two occurrences during her employment with the School District. First, Plaintiff contends that in her position as Director of Special Education, to which she was promoted in August of 2001, she was only paid at level "step 21 plus seven percent" while Gunty, her male predecessor, was paid at level "step 21 plus ten percent." In addition, Plaintiff contends that the raise she received while Director of Special Education was insufficient, as she received a three percent raise, while Gunty, her male predecessor, received a four percent raise. Second, Plaintiff claims that when she returned to the classroom for the 2002-2003 school year, she was placed on the step 19 level, instead of the step 28 level, the highest step on the schedule, and the level plaintiff felt accurately reflected her years of teaching experience. Plaintiff contends that Dennis Divoky ("Divoky"), who returned to the teaching ranks when he was not renewed as an administrative employee, was placed on the teacher's salary schedule at a step that credited him for all his years of teaching experience, including those years outside of the School District. Each of these allegations of alleged sex discrimination will be addressed in turn.

### C. Legal Standard For A Title VII Claim

Title VII makes it unlawful for an "employer to discriminate against any individual with respect to his...conditions of employment, because of such individual's...sex..." Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 516 (7th Cir. 1996) (citing 42 U.S.C. §2000e-2(a)(1)). A Title VII plaintiff may satisfy her burden of proof either by providing direct evidence of sex

-7-

discrimination, or she may employ the indirect, burden-shifting method of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1993). Pasqua, 101 F.3d at 516 (internal citations omitted).

A Title VII plaintiff establishes a prima facie case of sex discrimination by showing: (1) she was a member of protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees more favorably. O'est v. Illinois Dep't of Corrections, 240 F.3d 605, 612 (7th Cir. 2001) (citing Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 876 (7th Cir. 1999)).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its employment decision. Bellaver v. Quanex Corp., 200 F.3d 485, 493 (7th Cir. 2000). Once the employer proffers a legitimate, nondiscriminatory reasons for its employment decision, the burden then shifts back to the plaintiff to prove that the proffered discriminatory reason was pretextual. Id. (internal citations omitted). It must be remembered, however that, "the ultimate burden or persuading the trier of fact that discriminatory animus caused her dismissal rests at all time with the plaintiff." Id. (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 504 (1993); Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1032 (7th Cir. 1998)).

### D. Timeliness of Plaintiff's Claims

Defendant contends that Plaintiff's claims regarding her salary are time-barred, because her claims are not within 300 days of her filing her complaint with the EEOC. In Illinois, a plaintiff must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the "alleged unlawful employment practice." 42 U.S.C. § 2000 e-5(e)(1). The 300-day

limit begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows that she has been injured. See Sharp v. United Airlines, 236 F.3d 368, 372 (7th Cir. 2001). The School District contends that while O'Brien's complaint claims that the discriminatory act was in the setting of her salary upon her promotion from Assistant Director to Director in August 2001, and her voluntary return to the classroom in August 2002, in actuality, Defendant claims, the salary structure of her employment was dictated by the School District's actions when it first hired her in 1994. Defendant notes that O'Brien testified that she knew at the time the District utilized the salary schedule set forth in the teacher's collective bargaining agreement, which resulted in the step 21 formula being implemented. Therefore, Defendant contends, because Plaintiff did not file her complaint with the EEOC until December 27, 2002, her claim, which Defendant contends arose in 1994, is time-barred.

Plaintiff contends that the Defendant misconstrues her claim by stating that because she knew about the step 21 salary configuration, her claims are time-barred. First, in regards O'Brien's claim concerning her salary level when she was promoted from Assistant Director to Director, O'Brien contends that although her August 2001 promotion occurred outside the 300-day window, that claim should be considered a continuing violation under the Seventh's Circuit precedent, because Defendant continued to pay her at an unequal rate all the way through August 2002. Second, in regards to her return to the classroom in August 2002, Plaintiff notes that she was notified of her salary through a July 3, 2002 letter. O'Brien contends that the letter is well within 300 days of December 27, 2002, and therefore, her claim is not time barred.

First, the Court will address Plaintiff's claim in regards to her salary level after her August 2002 return to the classroom. The Court agrees with O'Brien that Defendants, by stating

that Plaintiff's claim goes back to 1994, when her salary level was established, misconstrues the nature of her claim. Clearly, Plaintiff is correct when she asserts that if male employees with similar educational backgrounds and years of experience were paid at a higher rate while employed in similar positions within the School District, Plaintiff can bring a claim of discrimination, regardless if her salary level was set in 1994. Plaintiff is also correct that it was not until her return to the classroom that she was able to discover whether male employees who returned to the classroom were paid at a higher level. Consequently, Plaintiff's claim arising from her return to the classroom in August 2002 is not time-barred.

Second, the Court must address Plaintiff's claim that arises from her promotion to Director in August 2001. Because Plaintiff filed her claim with the EEOC on December 27, 2002, all claims arising before March 2, 2002 are time-barred. However, Plaintiff contends, the failure to deny a pay increase should be considered a continuing violation, and each paycheck should be considered the basis for a new claim. Plaintiff cites Chambers v. American Trans Air, Inc., 17 F.3d 998 (7th Cir. 1994), in support of this contention.

The Seventh Circuit recently addressed the issue of whether paychecks can be considered continuing violations in Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014 (7th Cir. 2003). In Hildebrandt, the Seventh Circuit noted that although it had allowed paychecks to be considered continuing violations in prior cases (including Chambers), because of the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Seventh Circuit reevaluated its earlier interpretation of the continuing violation doctrine, and concluded that each paycheck that included allegedly discriminatory pay was a discrete discriminatory act, and not subject to the continuing violation doctrine. Hildebrandt, 347 F.3d at

1028. Consequently, the Seventh Circuit held that plaintiffs can only recover for the allegedly discriminatory pay within the statute of limitations. Id. The Seventh Circuit also made clear that a Plaintiff can recover for each paycheck inside the statue of limitations, as "the employers act of cutting each weekly paycheck...[gives] rise to a new claim of an unlawful employment practice.." Id. at 1029 (internal citations omitted). Consequently, while O'Brien can present a claim for any allegedly discriminatory paycheck after March 1, 2002, she cannot recover for any discriminatory paychecks prior to March 2, 2002, as those claims are time barred. Consequently, the Court will address whether Plaintiff has made out a *prima facie* case of sex discrimination on her timely claims.

### E. *Plaintiff's Claim While Director of Special Education (For Checks Received After March 1, 2002)*

As stated, Plaintiff contends that when she was promoted from Assistant Director to Director of Special Education in August 2001, she was only paid step 21 plus seven percent, while Gunty, her male predecessor, was paid step 21 plus ten percent. Again, in order to establish a prima facie case of sex discrimination, O'Brien must establish: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees more favorably. It is undisputed that plaintiff, as a woman, is a member of a protected class, and Defendant does not dispute that Plaintiff performed her jobs well, thereby meeting its legitimate business expectations. The Court also notes that the failure to pay Plaintiff the same rate as similarly situated male employee is considered an "adverse employment action" under Seventh Circuit precedent. See Hildebrandt, 347 F.3d at 1030 (citing Herrnreiter v. Chicago Housing

Authority, 315 F.3d 742, 744 (7th Cir. 2002) (finding an adverse employment action when plaintiff's paycheck reflected a salary which was determined with a lower raise than that given her coworkers). Additionally, Plaintiff has established that Gunty, a similarly situated male employee, was treated more favorably than O'Brien, as he was paid at a higher rate than O'Brien was when she was promoted to Director of Special Education. Therefore, O'Brien has established a prima facie case of sex discrimination.

Now that O'Brien has established a prima facie case of sex discrimination, the School District must provide a legitimate, nondiscriminatory reason for its employment decision. In fact, the Defendant refutes Plaintiff's assertion that she received only a three percent raise, while Gunty received a four percent raise. Consequently, this raises a genuine issue of material fact, as both Plaintiff and Defendant provide evidence to support their position on the level of Gunty's salary. Once this genuine issue of material fact is resolved, if Plaintiff and Defendant received different salaries and raises while in the same position, there is a genuine issue of material fact concerning whether that salary disparity was the result of sex discrimination.

### *F. O'Brien's Claim for Pay Rate After She Returned to the Classroom*

As noted previously, in her second claim, O'Brien contends that when she returned to the classroom for the 2002-2003 school year, she was placed at step 19, when she felt that she should be placed at step 28, the highest step on the schedule, and the level Plaintiff felt accurately reflected her years of teaching experience. O'Brien contends that Divoky, a male School District employee who returned to the classroom after he was not renewed as an administrative employee, was placed on a teacher's salary schedule at a step that credited him for all of his years of teaching experience, including his years outside the classroom.

Again, in order to establish a prima facie case of sex discrimination, O'Brien must establish: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees more favorably. The School District contends that because O'Brien voluntarily relinquished her position as the Director of Special Education, with an awareness that her salary would decrease, there was no adverse employment action. Defendant also contends that some men who relinquished their administrator positions to return to the classroom received a lesser salary than Plaintiff. However, Defendant's arguments misconstrue Plaintiff's claim. Neither O'Brien nor the School District disputes that O'Brien's return to the classroom was voluntary. However, when O'Brien did voluntarily return to the classroom, if she was not paid at a rate that reflected her years in the classroom (including years outside the School District), and men were paid in a way that reflected all of their years of teaching, including years outside of the School District, that is an adverse employment action. Consequently, O'Brien has shown that: (1) as a woman, she is a member of a protected class; (3) she was meeting the School District's legitimate business expectations; (3) she suffered an adverse employment action; and (4) she has alleged that Divoky, who is similarly situated to O'Brien, was treated more favorably when he returned to the classroom. Therefore, Plaintiff has established a prima facie case of sex discrimination.

Because Defendant contends that Plaintiff's return to the classroom was the action in question, they have not proffered a legitimate, nondiscriminatory reason as to why Divoky was allegedly paid in a manner that reflected all of his years of experience as a teacher, while O'Brien was not. Consequently, there is a genuine issue of material fact concerning whether, after he

-13-

returned to the classroom, Divoky was paid in a manner that reflected all of his years of teaching experience, while Plaintiff was not. In addition, if Divoky was paid in a manner that reflected all of his years of teaching experience, while O'Brien was not, there is also a genuine issue of material fact concerning whether this disparity was the result of gender discrimination. Consequently, Defendant's motion for summary judgment on Plaintiff's claim after her return to the classroom in August 2002 is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion for summary judgment is GRANTED as to all claims prior to March 2, 2002. Defendant's motion for summary judgment is DENIED as to all claims after March 1, 2002.

Enter:

David H. Coar
United States District Judge

Dated: **September 29, 2004**